IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No. 14-cv-01839-LTB-KMT

PATRICK SLAVIN,

        Plaintiff,

v.

GARRISON PROPERTY AND CASUALTY INSURANCE COMPANY,

        Defendant.

---

## ORDER

---

This matter is before me on the following pre-trial motions: 1) Motion *In Limine* to Exclude Evidence of Post-Litigation Events, Attorney Fees and Causation, filed by Plaintiff Patrick Slavin [**Doc #162**]; and 2) Motion to Exclude the Expert Opinions of Mr. Kevin Hromas, filed pursuant to Federal Rule of Evidence 702 by Defendant, Garrison Property and Casualty Insurance Company ("Garrison"). [**Doc #158**] After consideration of the parties' briefs and attachments, as well as oral arguments at a hearing on June 28, 2017, I GRANT IN PART, DENY IN PART, and HOLD IN ABEYANCE PART of Plaintiff's motion *in limine*, and I GRANT Garrison's Rule 702 motion to exclude the expert testimony of Mr. Hromas.

## I. BACKGROUND FACTS

Plaintiff filed a property claim with Garrison, pursuant to his homeowner's insurance policy, after a hailstorm on June 6, 2012 caused damage to the front of his home. The front of his home is L-shaped and only one side – known as the front

façade – incurred damage. The harm included damage to the window frames and to the brick on the front façade. Plaintiff's policy provides for replacement cost coverage.

Garrison issued an initial payment to Plaintiff on June 21, 2012. After a structural engineer assessed the brick damage, Plaintiff sent Garrison a bid from his contractor to repair the damage (including replacing the brick) on the front façade. Garrison's adjustor inspected the damage in early November of 2012, and then issued Plaintiff another check on December 21, 2012.

Sometime in late 2012 or early 2013, Plaintiff's contractor determined that the brick on Plaintiff's home was previously manufactured by General Shale, but was no longer being produced as a standard product. General Shale told Plaintiff's contractor that it would be willing to manufacture a special production run of 50,000 bricks. In March and again in April of 2013, Plaintiff requested that Garrison pay to have the 50,000 bricks manufactured by General Shale (although far less were needed) to replace the damaged bricks on the front façade of his home. Garrison rejected Plaintiff's request.

General Shale then provided Plaintiff a bid for the special run of 50,000 bricks of $25,774.99 on August 23, 2013. On September 24, 2013, Plaintiff provided Garrison an estimate from his contractor of $59,645.99 to replace the damaged brick on the front façade. This amount included $25,744.99 for the 50,000 bricks to be made by General Shale.

Garrison responded that the cost to manufacture the brick was excessive, and

countered with a contractor's bid to replace "the entire front of his home (not just the damaged front façade) with new brick" that would not match the existing brick in color and in texture, in early November of 2013, for $24,439.55. Because the cost to repair the front façade with the specially manufactured brick exceeded the cost to replace the entire front elevation, Garrison indicated that it would pay to replace the entire front elevation pursuant to the policy language which allows for replacement cost coverage to "(1) Replace, or pay you our cost to replace the property with new property of like kind and quality without deduction for depreciation." Garrison's contractor's bid was for brick that would be "as close as possible to your existing brick, but will not have the same texture and will be slightly off color," and that was why Garrison "is going to replace the entire front of your home corner to corner." On April 10, 2014, Garrison completed its investigation of Plaintiff's claim, closed the file, and sent him another check.

Plaintiff thereafter filed this lawsuit, on May 30, 2014, in District Court of Douglas County, Colorado. [Doc #2-5] The case was subsequently removed to this court by Garrison, on the basis of diversity jurisdiction pursuant to 28 U.S.C. §1332 and §1444. [Doc #1] Plaintiff's Amended Complaint asserts claims against Garrison for: 1) Breach of Contract; 2) Common Law Bad Faith Breach of Contract; and 3) Statutory Unreasonable Delay or Denial of Insurance Benefits pursuant to Colorado Revised Statutes §10-3-1115 and §10-3-1116 . [Doc #9]

## II. POST-FILING FACTS

Eight to nine months after Plaintiff filed this lawsuit, in February/March of

2015, General Shale agreed to produce a lesser amount of the specialty brick upon the request of Garrison's counsel. Specifically, it indicated that it would be willing to manufacture a reduced run of 16,000 (as opposed to its previous requirement of 50,000) bricks. The estimate for this smaller run was approximately $11,203, as opposed to the $24,439.55 for the 50,000 run.

Plaintiff then elected to have the amount of the loss on his claim determined by invoking the appraisal clause of his homeowner's insurance policy on March 16, 2015. The resulting Appraisal Award, which only addressed contested line items, determined the amount for replacement windows (at $12,884.61) and for replacement of the brick (at $23,623.25) with the specialty brick to be manufactured by General Shale in a reduced run. Pursuant to my court-ordered itemized accounting, Garrison contends it has overpaid Plaintiff by $6,603.36 and Plaintiff contends that Garrison still owes him $4,890.64. [Doc #156]

On March 1, 2017, I denied Garrison's motion for summary judgment. [Doc # 156] I ruled that because a genuine issue of material fact exists as the *total* amount of the loss set by the Appraisal Award (of the awarded amount for the brick and the windows plus the line items not set by the appraisers) and, in turn, whether Garrison has paid Plaintiff's claim in full or not, Plaintiff's breach of contract claim could not be dismissed on summary judgment. Additionally, I ruled that Plaintiff's bad faith breach claims – for bad faith breach of an insurance contract and for statutory unreasonable delay or denial of payment – could not be dismissed because a jury could find that Garrison acted unreasonably in handling Plaintiff's claim.

# III. PLAINTIFF'S MOTION *IN LIMINE*

In his Motion *In Limine*, Plaintiff seeks a pre-trial ruling excluding evidence based on its lack of relevancy. Rule 402 of the Federal Rules of Evidence provides that relevant evidence is generally admissible, and evidence is considered relevant if: (1) it has any tendency to make a fact more or less probable that it would be without the evidence; and (2) the fact is of consequence in determining the action. Fed. R. Evid. 401. A court may exclude relevant evidence, however, if its probative value is substantially outweighed by the danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence. Fed. R. Evid. 403. This Court's Rule 401 and 403 determinations receive deference and are reviewed under an abuse of discretion standard. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1162 (10th Cir. 2005).

## A. POST-LITIGATION EVIDENCE

Plaintiff first seeks a ruling that evidence relating to events that occurred after he filed this lawsuit is not admissible at trial. After Plaintiff filed this lawsuit in May of 2014, Garrison's counsel contacted General Shale, sometime in early 2015, to see if it would agree to make a smaller run of the specialty bricks. General Shale agreed to the reduced-run. Then, a month or so later, in March of 2015, Plaintiff invoked the appraisal provision of the insurance policy "to determine the total amount of loss owed." The appraisal clause in the policy specifically provides that:

>If you and we fail to agree on the amount of loss, either may demand an appraisal of the loss . . . The appraisers will separately set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon will be the amount of the loss.

The specific amount of the loss determined by the Appraisal Award is disputed by the parties. Garrison believes that the appraised value of the entire loss on the claim was assessed at $48,009.68, and Plaintiff believes that it was $60,503.68 – the difference of $12,494.00 is based on whether the amounts determined by the appraisers to repair the windows and the brick was duplicative of other work on the claim. It is undisputed, however, that the appraisers relied upon the cost of the reduced-run of specialty bricks from General Shale when assessing the amount of the loss.

Evidence of the post-litigation events (both General Shale's agreement to produce a reduced-run of specialty brick and the Appraisal Award process and amount) could be relevant to several different issues to be decided by the jury in this case. Specifically, the evidence relates to a determination of the dollar amount of the "covered benefit," whether Garrison breached its insurance contract with Plaintiff, and whether Garrison acted reasonably or in bad faith when handling Plaintiff's claim.

I first address whether evidence of the Appraisal Award is relevant to the determination of the dollar amount of the covered benefit for the purpose of assessing damages on a successful unreasonable delay/denial claim. Plaintiff argues that the amount of the covered benefit is a jury determination and that the

Appraisal Award "could not and did not determine the amount of the covered benefit as of November 2013 based upon information available to the parties then." [Doc #171 pp 3-4] *See* Colo Rev. Stat § 10-3-1116(1); Colo. Jury Ins. 25:10. Defendant argues, in response, that the amount of the Appraisal Award is a binding determination of the amount of the covered benefit.

As I indicated in my ruling from the bench, the parties in this case agree that the "covered benefit" in this case consists of the amount of the loss assessed by the Appraisal Award on the contested items; specifically, the amount for replacement windows ($12,884.61) and for replacement of the brick ($23,623.25) for a total of: $36,507.86. Therefore, evidence of the Appraisal Award is not relevant to an assessment of the amount of the covered benefit because that amount has been stipulated to by the parties. *See Hansen v. American Family Mutual Insurance Co.*, 383 P.3d 28, 37 (Colo. App. Dec. 19, 2013), *rev'd on other grounds*, 375 P.3d 115 (Colo. June 20, 2016)(ruling that the jury should not have been instructed to determine the amount of the covered benefit which was set at the maximum UIM policy benefits available after reduction of payment by the legally liable party, and the amount paid by the insurer following a mediation settlement); *see also Home Loan Investment Co. v. St. Paul Mercury Ins. Co.*, 78 F.Supp.3d 1307 (D. Colo. 2014); *Peden v. State Farm Mut. Auto. Ins. Co.*, 2016WL7228830 (D. Colo. Dec. 14, 2016)(unpublished)(ruling that because the maximum amount of the UIM benefits available were ultimately paid to the plaintiff, the amount of the "covered benefit" was not subject to dispute). Additionally, I note that Plaintiff concedes that such

stipulation by the parties as to the amount of the covered benefit, and that Garrison has paid Plaintiff for the amount assessed by the Appraisal Award, renders his breach of contract claim no longer cognizable. Because the amount of the covered benefit in this case is no longer in dispute and, in turn, Plaintiff's contract claim is not longer at issue, evidence of the Appraisal Award process and amount is not relevant for the purpose of assessing the amount of the "covered benefit" by the jury.

I next address Plaintiff's argument that evidence of the Appraisal Award, as well as General Shale's agreement to do a reduced-run of brick, is also not relevant to prove that Garrison acted reasonably in defense of Plaintiff's bad faith breach and statutory unreasonable delay/denial claims. Plaintiff asserts that Garrison will seek to introduce this evidence in support of its contention that Plaintiff's "claim was excessive and that Garrison's conduct was reasonable" because Garrison offered to pay Plaintiff more than the amount of loss ultimately assessed to be due on the claim by the appraisers. Plaintiff argues that such evidence should not be admissible for the purpose of assessing Garrison's reasonableness or bad faith because the jury must assess reasonableness at the time Garrison made decisions when handling Plaintiff's claim. *See Anderson v. State Farm Mutual Automobile Ins. Co.*, 416 F.3d 1143, 1147-48 (10th Cir. 2005)(ruling that "[f]or purposes of bad faith, the reasonableness of an insurer's conduct is evaluated under the circumstances that existed at the time"); *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. Ct. App. 1996)(holding that insurer's decision to deny

8

benefits "must be evaluated based on the information before the insurer at the time of that decision"). Plaintiff thus argues that the jury's determination of Garrison's reasonableness is assessed at the time the claim decisions were made and stopped at the time he filed this lawsuit and, as a result, any post-filing evidence related to the Appraisal Award and the reduced-run of brick is not relevant.

Garrison argues, in response, that the agreement to a reduced-run of brick and the Appraisal Award is part of the claim and, as such, evidence related to such evidence is admissible at trial for the purpose of assessing its reasonableness and bad faith in the claims process. Garrison maintains that both General Shale's agreement to do a reduced-run of brick (even though the request came from counsel) and the Apprisal Award (which assessed the amount of the loss, was binding, and was initiated by Plaintiff and completed pursuant to the terms of the homeowner's policy) were a continuation of the claims adjustment process, not part of litigation activity. Garrison thus asserts that this evidence is relevant and admissible to determine the reasonableness of it actions and decisions, as well as to provide context to the jury for the amount of the Apprisal Award. *See Rabin v. Fid. Nat. Prop. & Cas. Ins. Co.*, 863 F. Supp. 2d 1107, 1112 (D. Colo. 2012)(noting that the "duty of good faith and fair dealing continues unabated during the life of an insurer-insured relationship, including through a lawsuit or arbitration between the insured and the insurer.")(*quoting Sanderson v. American Family Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010)).

I conclude that General Shale's agreement to a reduced-run of brick, as well

as the subsequent determination of the Apprisal Award, both constitute routine claim activity to assess the amount of the loss. And, as a result, this evidence is relevant to determining the reasonableness of Garrison's conduct in handling Plaintiff's claim under Rule 401 (relevant evidence need only have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence"). *See generally Tae Hyung Lim v. American Econ. Ins. Co.*, 2014WL1464400 (D. Colo. Apr. 14, 2014)(ruling that evidence of an appraisal and resulting award and payment by the insurer was relevant to Plaintiff's statutory unreasonable delay/denial claims). Additionally, because the agreement for a reduced-run of brick and the Appraisal Award determination were routine claim activity, as opposed to settlement negotiations in the course of litigation activity, it is not deemed inadmissible compromise offers/negotiations evidence pursuant to Federal Evid. Rule 408. Although both events occurred after litigation, the reduced-run of brick agreement and the Appraisal Award were neither an offer of settlement nor conduct made during compromise negotiations, and thus does not constitute prohibited use of evidence as set forth in Rule 408(a). I further note that to the extent Plaintiff has previously indicated that he is challenging the evidence that Garrison's counsel asked General Shale to manufacturer the reduced-run of specialty bricks on the basis that it would potentially disqualify Garrison's current counsel, Plaintiff now clarifies that he does not intend to seek to disqualify counsel from trying this case.

However, I find that to the extent that evidence of the Appraisal Award amount and process is relevant to the jury's determination of reasonableness/bad faith in the claims process, it is attenuated in light of its irrelevancy to the amount of the covered benefit. Furthermore, any such relevance is outweighed by the danger of confusing the issues and misleading the jury pursuant to Rule 403. I agree with Plaintiff's assertion at oral arguments that presenting evidence of the Appraisal Award and the confusion related to the parties' disagreement as to the amounts awarded would result in a multitude of ancillary evidence including, perhaps, testimony from the appraisers. While the degree of materiality and probativity necessary for evidence to be relevant is minimal, Court must exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or misleading the jury and "[s]uch circumstances might arise when evidence suggests to the jury that it should render its findings . . .when circumstantial evidence would tend to sidetrack the jury into consideration of factual disputes only tangentially related to the facts at issue in the current case." *United States v. Jordan*, 485 F.3d 1214, 1218 (10th Cir. 2007). This is the case here. I conclude that the danger of confusing the issues and misleading the jury – as well as undue delay and wasting time – substantially outweighs the minimal probative value of this evidence and, thus, I will exclude evidence of the Appraisal Award amount and process at trial pursuant to Rule 403. However, the same dangers do not exist related to the evidence that Garrison's counsel asked for and received an agreement from General Shale, after Plaintiff filed suit, to manufacture

11

a reduced-run of specialty brick for a lower price. As such, this evidence is relevant pursuant to Rule 401 and will be admissible at trial for the purposes or proving or disproving Garrison's reasonableness and/or bad faith in the handling of Plaintiff's claim.

## B. ATTORNEY FEES AND LITIGATION EXPENSES

I note that Plaintiff, in his motion, argues that if the process and amount of the Appraisal Award is admissible, evidence related to the alleged excessiveness of legal costs/fees involved in this case should be admissible to counter that evidence as it relates to Garrison's reasonableness in its claims handling decisions. Because I have excluded this evidence, the alleged excessiveness of the attorney fees is not admissible as Plaintiff and Garrison agree that litigation conduct is generally inadmissible to prove an insurer's bad faith or unreasonableness. Thus, I hold that the attorney fees incurred in this case is not relevant or admissible.

## C. CAUSATION

Finally, Plaintiff seeks a ruling excluding evidence of the cause of the damage to his home. He argues that during the claims process Garrison did not contest that the hailstorm on June 6, 2012 caused the damage (including to the brick) to the front façade of his home. Plaintiff asserts, however, that during depositions and other litigation proceedings, Garrison "continually attempted to resurrect the question of causation." As a result, Plaintiff contends that Garrison has, throughout the course of this litigation, communicated an intent to reopen the ultimate issue of causation and that allowing Garrison to present evidence that

anything other than the June 2012 storm caused the brick damages would be prejudicial and inadmissible.

Garrison responds that during the claims handling process – particularly early on in the process – the cause of the damage to the brick (specifically, the cracks in the mortar) was initially unknown. Because Plaintiff alleges that "Garrison failed to include in its initial repair estimate the storm damage to [the] brick façade" as an example of bad faith claims handling [see Doc # 147], Garrison argues that questions about causation were at issue during the initial processing of the claim. Thus, evidence of *when* causation was established would be relevant to assess whether Garrison's actions were, at the time they were made, reasonable or constituted bad faith.

It is clear that both parties agree that the ultimate causation of the damage to the front façade of Plaintiff's house is not at issue. As such, if Garrison attempts to present evidence that the property damage in this case was not caused by the storm of June 2012, such evidence would be irrelevant under Rule 401. It appears, however, that the evidence at issue relates to the reasonableness of the timing of the causation assessment by Garrison during the course of handling of Plaintiff's policy claim. Therefore, evidence as to the timing of the causation determination by Garrison may be relevant and admissible. As a result, I hold in abeyance and defer ruling on the admissibility of any causation evidence until such time as it is proffered at trial.

## D.  CONCLUSION

Because the amount of the covered benefit in this case is no longer in dispute and, in turn, Plaintiff's contract claim is not longer at issue, evidence of the Appraisal Award amount and process is not relevant for the purpose of assessing the amount of the "covered benefit" by the jury.  However, because it constituted routine claim activity to determine the amount of the loss, evidence of the Appraisal Award has some relevancy to determining the reasonableness of Garrison's conduct in handling Plaintiff's claim under Rule 401.  Nonetheless, I conclude that the danger of confusing the issues and misleading the jury substantially outweighs the minimal probative value of this evidence and, thus, I will grant Plaintiff's request to exclude evidence of the Appraisal Award amount and process at trial pursuant to Rule 403.  Because I have excluded this evidence, Plaintiff will not be allowed to present evidence related to the alleged excessiveness of legal costs/fees involved in this case.  However, evidence related to the post-litigation agreement from General Shale to manufacture a reduced-run of specialty brick for a lower price, is relevant pursuant to Rule 401 and will be admissible at trial for the purposes or proving or disproving Garrison's reasonableness and/or bad faith as it made decisions in the handling of Plaintiff's claim.  Finally, I will defer ruling on the admissibility of evidence propounded by Garrison related to when causation was established – in order to assess whether Garrison's actions were reasonable or constituted bad faith – when and if it is introduced at trial.

# IV. GARRISON'S RULE 702 MOTION

In this motion, Garrison seeks to exclude the testimony of Plaintiff's proffered witness, Kevin Hromas J.D., as a expert on "the scope and reasonableness of [Garrison's] claim handling in the course of the investigation and resolution of the claim as found within the generally accepted insurance industry standards." [Doc #158-1]

## A. APPLICABLE LAW

A district court must act as a "gatekeeper" in admitting or excluding expert testimony. *Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1232 (10th Cir. 2005). Admission of expert testimony is governed by Fed. R. Civ. P. 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Thus, the Court first determines whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). Then, the Court must review the specific proffered opinions and assess the underlying reasoning and methodology to determine whether it is both scientifically valid and relevant to the facts of the case, i.e., whether it is helpful to the trier of fact. *Id.; see also Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003)). The proponent of the expert testimony bears the

burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009). While an expert witness's testimony must assist the jury to be deemed admissible, it may not usurp the jury's fact-finding function; the line between what is helpful to the jury and what intrudes on the jury's role as the finder of fact is not always clear, but it is well-settled that "[a]n opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a).

For the purposes of this motion, Garrison does not challenge that Mr. Hromas is qualified to testify as an expert. Instead, it is Garrison's position that Mr. Hromas should not be allowed to testify because his opinions are not reliable and thus are not helpful to the jury. To establish that the expert testimony is reliable, the reasoning or methodology underlying the testimony must be valid and must be properly applied to the facts in issue. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592-94, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993)(listing four nondispositive factors relevant to assessing reliability). "The trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999).

## B. INAPPPLICABLE STANDARD

First, I agree with Garrison that Mr. Hromas' opinions are unreliable because he weighs Garrison's decisions with an inapplicable standard of conduct when assessing the reasonableness of handling Plaintiff's claim. Specifically, Mr.

Hromas imposes a "duty of utmost good faith" on Garrison's actions which requires that the insurer put the interest of the insured "above and beyond its own interest." Garrison argues that this is the wrong standard of care, as Colorado law requires only reasonable conduct on the part of the insurer when making decisions on an insured's claim. *See* Colo Rev. Stat. § 10-3-1115(1)(a)(prohibiting and insurer from "unreasonably delay[ing] or deny[ing] payment of a claim for benefits owed to or on behalf of any first-party"); Colo. Jury Instr. Civil 25:5 ("[a]n insurers delay or denial in authorizing payment of a covered benefit is unreasonable if that action is without a reasonable basis"); *Bernhard v. Farmers Ins. Exch.*, 915 P.2d 1285, 1289 (Colo. 1996)(noting that one who is acting as a fiduciary for another has the duty to act with the utmost good faith and loyalty on behalf of, and for the benefit of, the other person, but "[t]he duty required of an insurer towards the insured is much more constrained"). Because the duty of "utmost good faith" provides the analytical backbone of Mr. Hromas' opinions, Garrison argues that it is not reliable and he should be excluded from testifying as an expert in this case. *See City of Hobbs v. Hartford Fire Ins. Co.*, 162 F.3d 576, 586 (10th Cir. 1998)(upholding the district court's decision that the proffered expert could not testify because he, in part, "lacked specialized knowledge about handling of bad faith cases in New Mexico involving third party insurance disputes").

Plaintiff acknowledges that Mr. Hromas "lacks experience with Colorado-specific insurance standards," but notes that he has repeatedly clarified that he understands that the "utmost good faith" standard is distinct from the "reasonable

conduct" standard required by Colorado law.  Plaintiff contends that his opinions

are instead based on the accepted insurance industry standard that "insurers treat

their insureds fairly."  Specifically, Plaintiff contends that Mr. Hromas'

methodology is reliable in that his opinion applies statements of generally accepted

industry principles – that he has gleaned from his decades of experience in the

industry – to assess the scope and reasonableness of Garrison's investigation.

In reading Mr. Hromas' report, it is apparent that his opinion as to whether

Garrison's actions during the claims handling process were unreasonable or

constituted bath faith were based on whether Garrison's representatives acted with

the "utmost good faith."  Plaintiff contends that even if Mr. Hromas relied on an

incorrect legal standard, there is no authority for the exclusion of all of his opinion

"on the sole basis of a single alleged incorrect legal standard."  While that may be

true, here the standard is applied and weighed against most if not all of  the actions

of the Garrison representatives.  For example, in a section entitled "Coverage

Analysis" in Mr. Hromas' expert report, he concludes that:

> 1) Jason Kimbro (the initial independent adjuster) "is not relieved of
> the duty  of utmost good faith and fair dealings with Plaintiff and the
> requirement to put Plaintiff's  interests above his own [and] he failed
> to do so in a direct and deliberate manner." [Doc #158-1 pg. 9];
>
> 2) The catastrophe representatives from Garrison "had no appreciation
> for their duty to put the interests of Plaintiff  ahead of their own
> interests to produce a 'closed' claim." [Doc #158-1 pg. 9];
>
> 3) Keenan Reinhert (the assigned representative) "bears the greatest
> responsibility for delivering the duty of utmost good faith to Plaintiff in
> the final resolution of the matter" and his claims decisions "directly
> flies in the face of the industry standard of utmost good faith." In

addition, he engaged in numerous delays after Plaintiff retained counsel and apparently "took the position that he was no longer held to any standards of utmost good faith in dealing with Plaintiff" at that time. "All of these actions by Mr. Reinert fail the most basic of best practices and good faith industry standards for the settlement of claims under an insurance contract." [Doc #158-1 pp 9-13];

4) T.J. Bartt (Mr. Reinert's supervisor) "had a duty of utmost good faith to attempt to address the concerns raised in the handling of the claim by Mr. Reinert" at the first sign of potential problems with a file. [Doc #158-1 pg. 14]; and

5) Raymond Kelly (upper management at Garrison) took positions that are "troubling in the context of the duty of utmost good faith owed to the Garrison policyholders in general and Plaintiff directly" and "could reasonably be considered as institutional bad faith on the part of Garrison as there are no checks and balances or management oversite in place to insure that policyholders are treated fairly or with utmost good faith and properly under the terms and conditions of the policy contract." [Doc #158-1 pg. 14]

Based on the foregoing, it is clear that Mr. Hromas relied upon and applied the standard of utmost good faith – as opposed to the applicable standard of reasonableness – when forming his opinions as to Garrison's handling of Plaintiff's claim. Plaintiff's argument that Mr. Hromas' opinion is within the reasonable confines of his subject area, and that he only lacks specialization in the area of Colorado law, is unavailing.

## C. POLICY INTERPRETATION

Additionally, I note that Mr. Hromas' opinions are not reliable because they rest on an implausible interpretation of policy language – specifically, that the policy obligated Garrison to pay any cost necessary to restore Plaintiff's property to its "pre-loss condition" by replacing damages materials with identical material and

construction.  Because Mr. Hromas' opinion is rooted in an interpretation of the

policy obligations that is plainly incorrect, Garrison argues that his expert

testimony would not be helpful to the jury as "both unreliable and irrelevant."

Plaintiff asserts, in response, that Mr. Hromas' interpretation is grounded in the

policy language, and that a challenge to that interpretation would go to the weight

of his opinion, not render it unreliable.  I agree with Garrison, however, that Mr.

Hromas' opinion is based on an interpretation of the policy language that defies

plain language which, in turn, renders his expert opinion unreliable.

The parties homeowners insurance policy provides, in a section entitled

"SECTION I - LOSS SETTLEMENT" as follows with regard to *dwelling coverage*:

> Subject to the amount of insurance covered losses are settled as
> follows: . . .
>
> 2. All items under Property We Cover - Dwelling Protection and
> buildings on the "residence premises" under Other Structures
> Protection. We will pay our cost to repair or our cost to replace the
> damaged property with similar construction and for the same use on
> the premises shown in the Declarations . . .

It appears, however, that during the claims process, Garrison indicated to

Plaintiff that his coverage was that designated for "Structures that are not

buildings and [a]ll covered structures whether or not they are buildings, if *located*

*away from the 'residence premises'.*"  That coverage provides that:

> We will pay the lesser of:
> a. The 'actual cash value'; or
> b. Our cost to replace the property with property of like kind, quality,
> age and condition; or
> c. Our cost to repair or our cost to restore the property to the condition
> it was in just before the loss.

Mr. Hromas contends that this language does not support Garrison's position that the could repair the brick damage by replacing it with similar – not identical – brick.   In support of this opinion, Mr. Hromas relies on a policy definition of "Replacement Cost Coverage" found under the loss settlement provisions for *personal property*.  The personal property definition of Replacement Cost Coverage is:

> Replacement Cost means the cost, at the time of loss, of a new item identical to the one damaged, destroyed or stolen. If an identical item is no longer manufactured or cannot be obtained, replacement cost will be the cost of a new item which is:
>
> a. Similar to the insured article, and
> b. Of like quality and usefulness.

Mr. Hromas opines that the definitions of Replacement Cost Coverage in the policy (for the dwelling, for structures located away from the residence premises, and for personal property) are "contradictory" and "could easily be construed as confusing or ambiguous to an Insured and should be interpreted in a light most favorable to the Insured." [Doc #158 - pg 11]

Regardless of which loss settlement coverage provision in Plaintiff's policy applies, I agree with Garrison that Mr. Hromas' opinion that a definition of "Replacement Cost Coverage" for replacing *personal property* would somehow apply to support an interpretation that the policy requires "identical" materials and construction is implausible and without merit.  Moreover, Mr. Hromas' conclusion that the policy contains contradictory terms, that "could be easily construed as confusing and ambiguous to an insured and thus should be interpreted in a light

21

most favorable to the insured," is clearly a legal opinion rather than an opinion as to insurance industry standards. *See Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988)(ruling that a lawyer is not allowed to testify as an expert witness regarding his opinions on the legal obligations arising from a contract, and on the legal significance of various facts in evidence). I conclude that Mr. Hromas' interpretation of the insurance policy language underlying his opinion that Garrison acted unreasonably or in bad faith based on its contrary interpretation renders his expert opinions unreliable.

## D.  LEGAL OPINIONS

In addition, I note that Mr. Hromas' report expresses numerous other legal opinions and conclusions, as well as purports to define the applicable law of this case. Mr. Hromas opines that Garrison violated a legal duty, as opposed to acted in contravention to ordinary practices of the industry, which is not permissible expert testimony under Colorado law. *See Baumann v. Am. Family Mut. Ins. Co.*, 836 F. Supp. 2d 1196, 1200-03 (D. Colo. 2011)(ruling that "[w]hile other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury. When an attorney is allowed to usurp that function, harm is manifest")(*quoting Specht v. Jensen*, *supra*, 853 F.2d at 808-09). While testimony of experts concerning ordinary practices or trade customs in an industry are admissible to enable the jury to evaluate the conduct of the parties as against the standards of ordinary practice, opinions as to the legal standards which the expert contends control the case are not. *Baumann v.*

*Am. Family, supra,* 836 F. Supp. 2d at 1200 (citations omitted)(ruling that an insurance industry expert's opinion that the insurer had a duty to pay its insured was phrased in terms of a legal duties or obligations and, thus, improperly usurped the function of the trial judge to instruct the jury on the law). Finally, I agree with Garrison that Mr. Hromas' report improperly asserts his own factual findings; expressed opinions based solely on speculation; engages in advocacy; and inappropriately comments on Garrison's litigation conduct.

## E. CONCLUSION

For all the foregoing reasons, I conclude that Mr. Hromas' opinions as to whether Garrison's representatives acted reasonably or with bad faith in handling Plaintiff's claim would not be helpful to the jury. Accordingly, I hold that in my role as a gatekeeper of expert testimony, the opinions expressed by Mr. Hromas are unreliable to the extent that they will not be helpful to a jury and, as such, his expert testimony will be not be admitted pursuant to Rule 702. Mr. Hromas' proffered testimony, as expressed in his expert report, is not the product of reliable principles in that they are based on an inapplicable standard of care, and they rely on an implausible interpretation of Garrison's obligations under the applicable insurance policy. In addition, Mr. Hromas' expressed opinions are replete with legal opinion and conclusions. Plaintiff has failed to prove the foundational requirements of Rule 702 by a preponderance of the evidence and I grant Garrison's motion to exclude Mr. Hromas' testimony.

# V. RULINGS

ACCORDINGLY, I rule as follows on the parties' pre-trial motions:

1) The Motion *In Limine* to Exclude Evidence of Post-Litigation Events, Attorney Fees and Causation, filed by Plaintiff Patrick Slavin [**Doc #162**] is: GRANTED IN PART as to evidence of the process and amount of the Appraisal Award as well as the Attorney Fees and Cost incurred during the litigation of this lawsuit; DENIED IN PART as to evidence of the post-litigation agreement from General Shale to manufacture a reduced-run of specialty brick at a lower price; and DEFERRED IN PART as to evidence of when causation was established if it is introduced at trial.

2) The Motion to Exclude the Expert Opinions of Mr. Kevin Hromas, filed pursuant to Federal Rule of Evidence 702 by Defendant, Garrison Property and Casualty Insurance Company [**Doc #158**] is GRANTED.


Dated: July __10__ , 2017 in Denver, Colorado.

BY THE COURT:


___s/Lewis T. Babcock_____
LEWIS T. BABCOCK, JUDGE